*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | | |
|---|---|---|
| *PATRICIA GRIFFITH, M.D.,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *Civil No. 08-220-P-H* |
| | ) | |
| *EASTERN MAINE MEDICAL* | ) | |
| *CENTER, et al.,* | ) | |
| | ) | |
| *Defendants* | ) | |

*MEMORANDUM DECISION ON DEFENDANTS' MOTIONS TO EXCLUDE CERTAIN EXPERT WITNESSES AND PLAINTIFF'S MOTION FOR LEAVE TO FILE LATE EXPERT WITNESS DESIGNATION*

The defendants, Eastern Maine Medical Center and John A. Bradford, M.D, move to exclude two of the plaintiff's designated expert witnesses from testifying at trial and seek an order barring the plaintiff from introducing at trial any expert testimony on the issue of whether the plaintiff's performance of four orthopedic surgeries at issue met the applicable standard of care.  Defendants Eastern Maine Medical Center and John A. Bradford M.D.'s Motion to Exclude Certain Expert Witnesses ("First Motion") (Docket No. 46) at 2; Defendants Eastern Maine Medical Center and John A. Bradford M.D.'s Motion to Exclude Certain Expert Witnesses ("Second Motion") (Docket No. 48) at 2.  The plaintiff has filed a motion for leave to file a late designation of an expert witness.  Plaintiff's Motion for Leave to File Late Expert Designation ("Plaintiff's Motion") (Docket No. 55).  I grant the defendants' motions in part and deny that of the plaintiff.

**Procedural Background**

On September 2, 2008, I issued a scheduling order for this case.  Scheduling Order (Docket No. 19).  That order set a deadline for designation of expert witnesses by the plaintiff of November 18, 2008, requiring the designation to be accompanied by "a complete statement of all opinions to be expressed and the basis and reasons therefor[.]"  *Id*. at 2.  The plaintiff filed a motion to amend the scheduling order on September 12, 2008 (Docket No. 21), to which the defendants did not object.  That motion was granted on September 15, 2008.  Docket No. 24.  That change to the scheduling order resulted in an increase in the maximum number of permitted depositions from five to seven per side.  *Id*.

On November 17, 2008, the plaintiff filed a document entitled "Disclosure of Plaintiff's Expert Witnesses."  Docket No. 29.  The next day, the original deadline for doing so, the plaintiff filed a motion to enlarge the time in which she could designate witnesses to November 21, 2008.  Motion to Enlarge Time to Disclose Experts as Required by Federal Rule[] of Civil Procedure 26([a])(2)(A) (Docket No. 31).  That motion was also granted without objection, Docket No. 33, and the plaintiff served on the defendants within the allotted time a designation of Arthur Shorr and Dr. Raymond Neveu as expert witnesses.  First Motion at 4.  The earlier designation, filed erroneously with the court by the plaintiff, listed Shorr, Dr. Neveu and Richard Strain, M.D.  Docket No. 29.

The defendants' motion, filed on December 23, 2008, seeks to exclude Dr. Strain and to bar the plaintiff from offering testimony on the applicable standard of care.  First Motion at 1-2.  The motion was based on the alleged inadequacy of the designation of Dr. Strain and the fact that Dr. Strain was the only witness designated by the plaintiff to testify on the standard of care issue.  *Id*. at 5-8.  The defendants' second motion, filed on December 31, 2008, seeks to exclude Dr.

Neveu on the grounds that the plaintiff's designation of him was inadequate and to bar the plaintiff from offering expert testimony on her claimed economic loss, as to which Dr. Neveu was similarly the only expert witness identified by the plaintiff. Second Motion at 5-10.

Then, the plaintiff withdrew her designation of Dr. Strain. Plaintiff's Memorandum of Law in Opposition to Defendants' Joint Motion to Exclude Certain Expert Witnesses (Dr. Strain) (Docket No. 54) at 1. On January 13, 2009, the plaintiff filed a motion for leave to designate Dr. Lawrence Floriani as an expert witness, apparently on the issue of the applicable standard of care. *Id*. at 2 & Plaintiff's Motion at 1.

## Discussion

### *Raymond Neveu, Ph.D.*

The plaintiff's initial disclosure with respect to Raymond Neveu, filed with the court on November 17, 2008, provided, in full:

> **Ray Neveu – Economic Expert**
> Ray Neveu will opine the approximate value of economic loss to Dr.
> Griffith due to the defendant's [sic] acts described in the complaint.
> His contact information:
> P. O. Box 1099
> Portland, Maine  04101-1099
> Phone: (800) 590-4447
> Fax: (866) 600-7059
> Email: Maison@maine.rr.com

Disclosure of Plaintiff's Expert Witnesses (Docket No. 29) at [1]. Clearly, this disclosure does not comply with the court's scheduling order, which requires the plaintiff to "provide a complete statement of all opinions to be expressed and the basis and reasons therefor[.]" Scheduling Order at 2.

On November 20, 2008, the plaintiff provided the defendant with a report from Dr. Neveu. Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Exclude

Certain Expert Witnesses (Dr. Neveu) ("Neveu Opposition") (Docket No. 56) at 1.  The report is

Exhibit A to the Second Motion.  The report itself is three pages long; curriculum vitae of 18

pages is attached to it.

The following portion of the report may reasonably be construed to address the

requirement of "a complete statement of all opinions to be expressed and the basis and reasons

therefor":

> 3.  That I intend to offer an expert opinion as to the present value of net
> lost income suffered by Dr. Patricia Griffith in the above-fashioned
> action.  I will also give an opinion as to the extent of concentration of
> orthopedic surgical services in the relevant hospitals, in relevant
> geophysical [sic] areas.  My final expert opinion as to exact damages
> will include the present value of net lost income both past and future and
> will incorporate all evidence related to mitigation of such losses
> including fringe benefits as well as salary losses.  No opinions will be
> offered as to liability in this case.  The scope of my testimony will be
> limited to economic damages only using the sound economic principles
> that I have used in many other cases in which I have been involved and
> the exclusion of Dr. Griffith from the economic market in Bangor, Maine
> by EMMC.  I do believe that Dr. Griffith's damages can be fairly traced
> and related to the compensation she received as medical staff member of
> EMMC and extrapolated to those she would have received at a later date
> if she had been allowed to continue working.  Such a final damage
> estimate will by necessity be offset by any earnings accrued through
> mitigation.  This is a complex case and my preliminary estimate will be
> filed before trial in a timely fashion.  I still require some clarification as
> to tax adjustments, growth rates, timing of shifting to director status, a
> better estimate of differential fringe benefit value and the typical income
> Dr. Griffith would have realized if she had continued working at the
> EMMC and I reserve the right to adjust my final estimate based on
> further study and calculation.  Also, I will consider the concentration of
> patients discharged from EMMC and surrounding competitors and
> services provided to the patients based on patient zip code information
> and/or other methods used to identify the relevant hospital market areas.
> My final report as to antitrust issues will be filed in a timely fashion
> before trial.
>
> 4.  That in regard to the specific data or other information that I have
> considered in forming this opinion, I have reviewed demographic and
> other basic case information as provided by Dr. Griffith and her counsel
> including Dr. Griffith's curriculum vita and summary and time frame of

the events at issue in this lawsuit.  I also will be examining the zip code information and/or other data resulting from methods used to identify the relevant hospital market areas that will be provided to me by Dr. Griffith and her counsel.  I have also reviewed income information as to Dr. Griffith's income.  I have additionally been privy to Dr. Griffith's federal and state tax returns from the years 2003 through 2005 in addition to her EMMC pay stubs.  I have reviewed her contract with the EMMC.  I have reviewed EMMC's bylaws.  Also, I will consider the concentration of patients discharged from EMMC and surrounding competitors and services provided to the patients based on patient zip code information and/or other methods used to identify the relevant hospital market areas.

Rule 26(a)(2)(B) Expert Report of Raymond Neveu, PH.D., DABFE (Exh. A to Second Motion) at 2-3.

At this late date,[1] and almost two months after the defendants filed their motion to exclude Dr. Neveu's testimony, the plaintiff has made no attempt to address the deficiencies in her November 20 disclosure.  The portion of the report quoted above cannot reasonably be read to provide a complete statement of all the opinions to be expressed by Dr. Neveu or the reasons for those opinions.  Indeed, it merely asserts that the opinions "will be filed before trial in a timely fashion."

This court has already specified what "a timely fashion" is in this case in its scheduling order.  That is not a matter to be determined at the convenience of the expert witness, particularly when no reason is given why the expert cannot comply with the deadline set in the court's scheduling order.  An expert's complete report is due at a specific time during the discovery period in order to allow opposing counsel to depose the expert, if desired, and to allow the opposing party's expert witness time to respond to the opinions expressed in the report, also within the discovery period, so that the plaintiff's counsel will also have an opportunity to explore those opinions before the end of discovery and the deadline for the filing of dispositive motions.  *See Thibeault v. Square D Co.*, 960 F.2d 239, 244 (1st Cir. 1992) (Rule 26 promotes

---

[1] The discovery deadline in this case, as finally extended,  is February 27, 2009.  Docket No. 63.

fair play in discovery and at trial).  Allowing an expert to express his opinions "before trial" at a time chosen by the expert would throw in disarray the orderly procedure that the civil rules are designed to promote.  *See Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 248 F.3d 29, 35 (1st Cir. 2001).  An expert can always supplement his or her opinions after submitting a report, should the need arise.  What the expert cannot do is dictate the timing and progress of the case; that is a matter solely within the court's control.

The First Circuit has provided clear guidance on this issue:

> The expert disclosure requirements are not merely aspirational, and courts must deal decisively with a party's failure to adhere to them.  The Civil Rules provide in pertinent part that a party who "without substantial justification fails to disclose information required by Rule 26(a)[2] . . . is not, unless such failure is harmless, permitted to use as evidence  . . . any witness or information not so disclosed.  Fed. R. Civ. P. 37(c)(1) . . . .  We have explained before that Rule 37(c)(1) "clearly contemplates stricter adherence to discovery requirements, and harsher sanctions for breaches of this rule, and the required sanction in the ordinary case is mandatory preclusion."

*Lohnes v. Level 3 Comm's., Inc.*, 272 F.3d 49, 60 (1st Cir. 2001) (citations omitted).

Apparently in an attempt to show that her failure to comply with Rule 26(a) and the scheduling order in this case is harmless, the plaintiff asserts that

> [i]t is important to note that Dr. Neveu was the Plaintiff's expert disclosed in the previous Superior Court litigation.  In 2007, Dr. Neveu's lengthy report speaking to lost income was disclosed to Defendant EMMC. . . . Although Dr. Bradford was not a party to the Superior Court litigation, he was in receipt of Dr. Neveu's report prior to November 17, 2008; it was provided to both Defendants in discovery in this case prior to then.  As stated in the 11/20/08 report of Dr. Neveu, Dr. Neveu has continued to compile data with regard to lost income.  Particularly, Dr. Neveu seeks income data regarding physicians employed by Eastern Maine Medical Center.  This has been sought by Plaintiff in her interrogatories, particularly interrogatory number 8.  Defendants have not yet provided this information.

---

[2] The requirements of Rule 26(a)(2)(B) are incorporated by reference in the scheduling order.  Scheduling Order at 2.

> With regard to the market data portion of Dr. Neveu's opinion, a supplemental report was provided to Defendants on or about January 6, 2009. . . .  It is Plaintiff's position that the information contained therein is more than adequate to comply with the requirements of Rule 26(a)(2)(B).

Neveu Opposition at 2-3.

These arguments might better serve the plaintiff if Dr. Neveu's November 2008 report had referred in any way to his earlier report concerning lost income; if the plaintiff had specified the date on which she sought the information from EMMC that she now claims was necessary to complete the lost income analysis, so that the court could determine whether it was sought sufficiently early in the discovery period to allow Dr. Neveu to complete his lost income opinion in a timely fashion;[3] if EMMC's response to the request was overdue, whether the plaintiff had taken any steps to compel its production; if the plaintiff or Dr. Neveu had explained why he could not provide his market data opinion earlier than January 6, 2009, some six weeks after the deadline for its production set by the court; and why, if such an explanation exists, the plaintiff had not sought the court's permission to delay production of the report.  Again, the untimely provision of an adequate report on market data, assuming *arguendo* that it is adequate, after the deadline for designation of expert witnesses by the defendants, deprived the defendants of the opportunity to designate an expert witness in opposition.  This result is not harmless, and it clearly prejudices the defendants.[4]   *Lohnes*, 272 F.3d at 60 (depriving opponent of opportunity to depose proposed expert, challenge his credentials, solicit expert opinions of its own, or

---

[3] In fact, it appears that the plaintiff did not seek this information from EMMC until November 25, 2008, after the deadline for her designation of expert witnesses had passed.  Defendants Eastern Maine Medical Center and John A. Bradford M.D.'s Reply Memorandum ("Neveu Reply") (Docket No. 60) at 4-5.  Thus, the self-induced lack of such information cannot serve as a basis for a finding that the plaintiff's failure to comply with Rule 26(a) and the scheduling order was harmless.

[4] The plaintiff asserts that "[p]rejudice cannot be established by Defendants."  Neveu Opposition at 3.  The burden is on the party that has failed to comply with discovery deadlines to establish that its failure is harmless, one element of which is material prejudice.  *Downeast Ventures, Ltd. v. Washington County*, 450 F.Supp.2d 106, 111 (D. Me. 2006).

conduct expert-related discovery gives party "exactly the type of unfair tactical advantage that the disclosure rules were designed to eradicate").

None of the case law cited by the plaintiff requires a different outcome.  *Macaulay v. Anas*, 321 F.3d 45, 51 (1st Cir. 2003), sets forth the standard that I have applied in this case.  As was the case in *Macaulay*, the plaintiff here "had ample time to conduct discovery and to submit her expert reports within the period allotted by the district court" and has not advanced any justification for her belated compliance.  *Id*. at 52.  At the time that Dr. Neveu's market data opinion was finally provided, the discovery deadline in this case was less than a month away.  Like the trial court in *Macaulay*,

> had the district court allowed the late submission, it would have had a Hobson's choice: either to force the defense to trial without appropriate preparation (such as targeted pretrial discovery) or to reopen discovery and vacate the trial assignment.  Under those circumstances, it is surpassingly difficult to fault the court for refusing to overlook the discovery violation.

*Id*.

Judge Cohen's concern with the moving party's delay in bringing to the court's attention its opponent's failure to provide sufficient expert witness designations in *White v. Meador*, 215 F.Supp.2d 215, 221-22 (D. Me. 2002), was based on a greater delay than that of the defendants here.  In that case, unlike here, no harm to the moving party resulting from the insufficient designations was apparent, and the moving party did not bring the matter to the court's attention until after the close of discovery.  These differences are significant.

Similarly, nothing in *Downeast Ventures*, to which the plaintiff does not provide a pinpoint citation, Neveu Opposition at 3, is inconsistent with my analysis of the instant case.  In *Downeast Ventures*, Judge Woodcock found that the late designation of an expert witness was harmless because any prejudice to the opposing party could be fully mitigated, because

substantial time remained in the discovery period; the opposing party had not argued that it was unfairly surprised by the late designation; the expert opinion did not concern "a particularly complex area of expert testimony" or present a new theory of damages; and Judge Woodcock accepted the explanation for the delay.  450 F.Suppp.2d at 112-13.  None of these factors is present here.

This court will not delay trial in order to give the defendants the time necessary to remedy the effects of the plaintiff's failures.  The motion to strike the testimony of Dr. Neveu from trial is granted.

### B.  Dr. Lawrence Floriani

In a motion filed on January 13, 2009, the plaintiff seeks leave to designate Dr. Lawrence Floriani as an expert witness on the standard of care.  Plaintiff's Motion at 1; Plaintiff's Memorandum of Law in Opposition to Defendants' Joint Motion to Exclude Certain Expert Witnesses (Dr. Strain) ("Floriani Memorandum") (Docket No. 54) at 2.  The proposed designation comes approximately two months after the already enlarged deadline for such designations.

The plaintiff argues that this late designation should be allowed because, first, Dr. Floriani's testimony will not be expert testimony at all, but rather factual testimony, and, second, no prejudice to the defendants could result from the designation since the defendants "have been aware since the hearing before the Hearing Committee [of EMMC] on June 18, 2005, as to what Dr. Floriani would opine with regard to the four cases in question[,]" and there is ample time before trial for defendants to take his deposition.  *Id*. at 4.  What there is not, however, is "ample time," without further delay of trial, for the defendants to obtain and designate an opposing expert, even if the plaintiff were willing to forego her opportunity to depose such an expert.  To

allow Dr. Floriani to testify without allowing the defendants to undertake these tasks, so that the court's trial schedule could be maintained, would clearly prejudice the defendants to an unacceptable degree.

Further, the plaintiff's argument that Dr. Floriani's testimony would only be factual does not withstand scrutiny.[5]  She contends as follows:

> Dr. Floriani was the Plaintiff's primary standard of care expert at the evidentiary hearing before the Hearing Committee of Eastern Maine Medical Center which conducted the hearing which led to the permanent suspension of Dr. Griffith's privileges.  Dr. Floriani testified at length at that proceeding.  That evidentiary hearing was transcribed and all parties are in possession of that transcript. . . . [Dr. Floriani] was examined and cross examined.  In addition, members of the Hearing Committee asked him questions.  Dr. Floriani's opinions regarding standard of care are stated in detail therein and all of said testimony will merely be incorporated by reference into his expert report pursuant to Federal Rule 26(a)(2)(B).
>
> At the Hearing Committee proceeding there were four cases considered.  Dr. Floriani testified at length that the standard of care was met by Dr. Griffith in each of those four cases.  It was upon the analysis of these four cases that the Hearing Committee affirmed the summary suspension earlier undertaken by the Medical Executive Committee and recommended a permanent suspension of most of Dr. Griffith's privileges at EMMC.  Assuming that summary judgment is overcome, it will be the job of the fact finder at trial to determine whether or not based upon those four cases, the determination of the Hearing Committee was justified.
>
> Plaintiff submits that the most reasonable interpretation of the testimony to be offered by Dr. Floriani at the trial on the merits, if summary judgment is denied in whole or in part, is that it is factual testimony.  The fact finder would have to evaluate the decision by the Hearing Committee, based upon the evidence that it heard at the administrative hearing.  Part of that evidence is obviously Dr. Floriani's

---

[5] The plaintiff did not name Dr. Floriani as a fact witness in her initial disclosure under Fed. R. Civ. P. 26(a).  Initial Disclosure of Plaintiff (Exh. B to Defendants Eastern Maine Medical Center and John A. Bradford M.D.'s Reply Memorandum in Further Support of Defendants' Motion to Exclude Certain Expert Witnesses Designated by Plaintiff Patricia Griffith, M.D. and Defendants' Memorandum in Opposition to Plaintiff's Motion for Leave to File Late Expert Designation ("Floriani Reply") (Docket No. 57).  Nor has she apparently updated that document to add Dr. Floriani as a fact witness.  *See* Fed. R. Civ. P. 26(e)(1).

testimony.  It will have to be repeated to the Jury at the trial on the merits.

Floriani Memorandum at 2-3.

If in fact the plaintiff will offer Dr. Floriani's testimony at trial in order for the jury "to determine whether or not based upon those four cases[] the determination of the [hospital] Hearing Committee was justified[,]" then that testimony will obviously be expert testimony.  The mere fact that Dr. Floriani testified about his opinions at some time in the past, even in a proceeding related to the instant case, does not transform his second expression of those opinions under oath into factual testimony.  The subject of his testimony will still be his opinion with respect to the standard of care applicable to each of the four cases at issue, and whether the plaintiff met that standard in each case.  That is quintessential expert opinion testimony.

The defendants argue, persuasively, that their cross-examination of Dr. Floriani at deposition, and, most likely, at trial, would necessarily differ from any cross-examination that took place at the hospital's administrative hearing.  Floriani Reply at 5.  This is another factor to be considered in evaluating the plaintiff's motion.  While the substance of Dr. Floriani's trial testimony might not be a surprise to the defendants, they are entitled to the opportunity to probe it thoroughly before trial and to proffer at trial opposing expert testimony.

It is significant that the plaintiff proffers no justification for her failure to designate Dr. Floriani before this late date.  The conclusion that she does so now only in hopes of plugging the gap left by her withdrawal of her original designation of Dr. Strain to testify on the same subject matter appears inescapable.  The need for relief from one's own tactical decisions or failures to comply with this court's scheduling order hardly constitutes substantial justification for the late designation.

The plaintiff's motion for leave to designate Dr. Floriani as an expert witness is denied.

11

*C.  Other Requested Relief*

The defendants ask this court to "prohibit[] Plaintiff from otherwise introducing expert testimony regarding whether she met the standard of care in her orthopedic surgery cases[,]" First Motion at 8; Floriani Reply at 6, and to "prohibit[] Plaintiff from otherwise introducing expert testimony on the subjects on which Plaintiff purports to offer Dr. Neveu as an expert[,]" Second Motion at 10.  I see no need for such orders at this time.  Should the plaintiff attempt to introduce expert opinion testimony at trial from a witness not properly designated, the trial judge can entertain any objection by the defendants at that time.

**Conclusion**

For the foregoing reasons, the defendants' motion to exclude the testimony of Dr. Raymond Neveu is **GRANTED**; the defendants' motion to exclude the testimony of Dr. Richard Strain is **MOOT**; and the plaintiff's motion to allow the late designation of Dr. Lawrence Floriani as an expert witness is **DENIED.**


Dated this 28th day of February, 2009.


/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge